Harry C. Bock et al., Appellees, v. H. W. Felker, Appellant.

Gen. No. 9,385.

Opinion filed September 19, 1939.
Rehearing denied November 30, 1939.

GARDNER & GARDNER, of Rochelle, for appellant; FRED E. GARDNER, of counsel.

STANLEY H. GUYER and HARRY L. ARNOLD, both of Rockford, for appellees.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

On June 11, 1937 Harry C. Bock, Lucille Bock and Reuben Bock filed their complaint in the circuit court of Ogle county alleging that the plaintiff Harry C. Bock for six years prior to November 5, 1936 had been employed by the defendant H. W. Felker as a drug clerk and while so employed had performed his duties in a business-like way and accounted for all moneys received by him as such clerk; that on said November 5, 1936 he was wrongfully accused by defendant W. W. Hall of stealing and embezzling money from said defendant Felker and that as a result of cruel and abusive threats of criminal prosecution, his reason and judgment were destroyed and he procured a note of $2,850, which was secured by a real estate mortgage, which belonged to him and his wife, to be discounted receiving therefor $2,000, which amount, together with four notes aggregating $400, which he procured his brother Reuben Bock to execute, were given to said Felker, all without consideration and solely because of the threats made to and duress imposed upon the plaintiff Harry C. Bock. The complaint charged that Hall and Felker had entered into a conspiracy to cheat and defraud the plaintiffs out of said money and notes by threats of criminal prosecution and prayed for the return of the value of the $2,850 notes so secured by real estate mortgage and for

the cancellation and return of the four notes aggregating $400. Service was not had on Hall and before hearing the suit was dismissed as to W. W. Hall.

The answer of the defendant Felker, among other things admitted that the plaintiff Harry C. Bock performed his duties as drug clerk in a careful and business-like manner but denied that he had accounted to the defendant for all money received by him, denied that he had made any threats of criminal prosecution or that he authorized Hall to make any such threats, denied that he and Hall had ever entered into any conspiracy or scheme to defraud Bock, but averred that Bock had executed an instrument in writing admitting he had embezzled money from this defendant of not less than $2,700 and alleges that in settlement thereof Bock paid him $2,000 in cash and delivered to him the four notes signed by Harry and Reuben Bock aggregating $400. A jury was waived and the issues submitted to the chancellor, who entered a money decree in favor of the plaintiffs Harry C. and Lucille Bock for $2,850 and a money decree for $65 in favor of Harry C. Bock and directed the return by the defendant to Harry C. and Reuben Bock of the four notes aggregating $400. From this decree the defendant appeals.

The evidence discloses that appellant, H. W. Felker, owns and operates a drug store in Mt. Morris, Illinois and has since March, 1930. Appellee, Harry C. Bock, was 35 years of age at the time of the hearing of this case, and began work for appellant as a clerk in his drug store at the time appellant became the owner thereof and was receiving for his services as clerk the sum of $25 per week. Lucille Bock is the wife of Harry C. Bock and testified that they had been married 14 years, that she had worked 9 or 10 of those years and at the time of the hearing owned a beauty shop in Dixon. Reuben Bock, the other appellee, is a brother of Harry Bock, 47 years of age, lives in Mt.

Morris and is employed by the Kable Company and has been for many years.

Harry Bock worked continuously for appellant as his clerk from March, 1930 until some time in 1934 when he went to Denver, Colorado to attend a pharmaceutical school. After completing a six months' course there he returned to Mt. Morris and re-entered appellant's employ and continued until April, 1936, when he quit and went to Morrison, where he worked until July, 1936, when he returned to Mt. Morris and again went to work for appellant in his drug store and continued working for him until about November 21, 1936. W. W. Hall, B. J. MacMurran and Katherine Turpney were a partnership doing business under the name of the Walton Service, Des Moines, Iowa. Its business, according to the testimony of Hall, was to send its representatives into a store, make purchases and a survey of the merchandise, observe the conduct of the clerks and check up to determine whether the store was functioning as it should and whether the clerks were honest or not. Mrs. O. R. Jamieson was one of the employees of the Walton Service and she and another employee in October, 1936 went to Mt. Morris and interested appellant in its service and entered into an oral contract with him by the provisions of which appellant was to pay $25 for the service rendered and in addition Hall and his associates were to receive one-half of any amount which was recovered from any defaulting employee. The latter part of October or the first week in November thereafter, Hall and three of his employees came to Mt. Morris and the three employees made purchases at the store. There was a cash register in the store into which all cash received from sales was to be placed and in connection with this register there was a strip of tape which recorded the amount of the sales. On November 4, 1936, according to the testimony of appellant and Hall, Hall went to Mt. Morris, met appellant, checked

with him some of these sale strips and appellant introduced him to Bock as an advertising man and at the request of Hall, Bock went with Hall to Hall's room at the Kable hotel in Mt. Morris. According to Bock's testimony, at one time this was on Tuesday, November 3, 1936, at another time he testified it was November 4, 1936. At the hotel, according to Bock's testimony Hall told him that he and appellant had been checking up and found that Bock had taken $3,832 of appellant's money while clerking in his store, told him that he would be blacklisted all over the country and there was only one thing to do and that was to dig up some money for Felker or go to the pen. According to the testimony of Hall, he, Hall, showed Bock the sales strips from the cash register and stated to him that he had not been ringing up the money on his sales and asked him if there was anything he wanted to tell him, Hall, about this and Bock replied: ''Yes, I guess you caught me.'' Before they left the hotel Hall wrote on a typewriter, the instrument hereinafter set forth. Bock testified that Hall read it over to him but he was so frightened and nervous that he didn't understand it, but signed it and handed it to Hall. Hall testified that after he prepared the instrument he handed it to Bock, who read it, signed it, handed it back to Hall and according to Hall they both went to the drug store and Hall showed appellant Bock's confession, which is as follows: ''November 4, 1936. I, Harry Bock, am an employee of Hugh Felker of Mt. Morris, Illinois. I have been in Mr. Felker's employee for the past six years in the capacity of salesman. Before Mr. Felker purchased the drug store I worked for Mr. F. J. Dean in the same location. During the time I worked for Mr. Dean I first began making sales and not turning in all the money but appropriated money from the cash sales wrongfully. This habit continued when Mr. Felker bought the store. I have taken as much as three dollars and seventy cents in one day and as

closely as I can estimate it I have averaged not less than a dollar and sixty cents a day. I can not tell or estimate how much money I have taken from Mr. Felker but to the best of my knowledge and belief the total amount of money I have wrongfully appropriated is not less than two thousand seven hundred dollars. I make this statement of my own free will and accord without having been promised immunity or without having been threatened by any person or persons. I promise never to do this again and if ever found so doing fully understand that this statement will be used against me. Harry C. Bock. Witnessed by W. W. Hall.''

According to Bock's testimony, after the foregoing instrument was prepared by Hall, he, Hall, after telling Bock to dig up some money or go to the pen, asked him if he had any money and Bock told him he had $65 in the bank and Hall told him to get it for appellant to show him he was ''going to meet him half way and in that way we'll hush the thing up.'' Bock thereupon went to the bank and drew a check which was offered in evidence and which is dated November 5, 1936 for $45 and that amount, together with $20 which he had in his pocket, he gave to Hall. After this was done, Hall, according to Bock, told Bock that $65 would not be enough to settle and asked him if he had any more money or property and Bock told him he had had a property but had sold it on contract and Hall asked him to see the contract and Bock went to the bank and secured it from his safety box in the bank and brought it back to the hotel and gave it to Hall. The evidence is that Bock and his wife had built a home some years previous to 1935, 40 per cent of the cost of which had been furnished by the mother of Mrs. Bock and Mr. and Mrs. Bock had furnished the balance. In 1935 they sold this home to Maurice Stewart, and received in payment therefor some cash and a note for $3,100 secured by a trust deed, in which

Harry C. Bock was named as trustee. In November, 1936 the amount unpaid on this note was $2,850 and it was this note and trust deed which Harry C. Bock procured from his box in the bank. According to Bock's testimony Hall, on November 5, 1936, requested Bock to loan him his car so he could go to Rockford and sell this note and trust deed, Hall stating to Bock that he thought he knew someone there who would buy it for $2,500. Both Hall and appellant testified that they never saw the note or trust deed. On November 5th, according to Bock, he again saw Hall, who told him he was unable to sell the trust deed but that the bank would buy it for $2,000 but that he and appellant had decided that they wanted $2,500 and asked Bock if he knew where he could raise the other $500. Bock replied that he might borrow it from his brother and that he would go down into the lobby of the hotel and wait for his brother Reuben to come along from work; that he did so and Reuben came along and went with Harry up to Hall's room, where he introduced him to Hall, that before going to Hall's room, he explained to Reuben that appellant and Hall were trying to beat him out of some money; that upon arriving at the room Hall told him that Harry was up against a serious charge, that he had taken a lot of money, over a period of years, about $3,200, that Reuben said to Hall that to help Harry out he would sign four notes, each for $100 but would not do it at that time but would go home and study it over. About five o'clock this same evening, November 5th, Hall and appellant went to see Stewart and later at the home of Mrs. Bock's mother, Bock saw Stewart and told him he wanted to sell the trust deed. Stewart and Reuben Bock work at the same place and the next day Stewart talked to Reuben and talked to him about Harry and Reuben said he knew about Harry's trouble and Stewart told him he would like to buy the trust deed and Reuben said to go ahead and buy it, that he couldn't. It further

appears from the evidence that Harry stated he would take $2,000 for the note and trust deed and on Saturday, November 7th, Harry and Stewart met at the bank in the president's office. Besides Bock and Stewart, Mr. Dean, the president of the bank, was there. Neither Hall nor appellant were present. Bock had the note and trust deed and in return for a $2,000 draft made payable to his order, he delivered the note and trust deed to Stewart and executed a release for the trust deed and according to Stewart's testimony, he, Stewart, made $850 thereby. Between 7:30 and 8 o'clock Friday evening, November 6th, Reuben returned to the hotel and executed four notes, each for $100, and these notes, also signed by Harry, were delivered to Hall and by Hall to appellant. Reuben requested something to show that the matter was straightened up and the following instrument was prepared by Hall, dated the next day, as it was understood the $2,000 was to be obtained on Saturday, November 7, 1936.

"November 7, 1936 ·

"Whereas, Hugh Felker, of Mt. Morris, Illinois, claims that Harry Bock is indebted to him for a sum of money amounting to Four Thousand Dollars which said Harry Bock has wrongfully appropriated from him while in his employee

"Whereas, Harry Bock admits that he is indebted to Hugh Felker for money wrongfully appropriated from said Hugh Felker but not for a sum amounting to Four Thousand Dollars

"Whereas Hugh Felker is ready and willing to accept a sum of money and other consideration in compromise of said claim

"Whereas Harry Bock is ready and willing to pay Hugh Felker a sum of money and other consideration in compromise of said claim

· "Now Therefore, be it understood and agreed between Hugh Felker, hereinafter designated Party of

the First Part and Harry Bock, hereinafter designated Party of the Second Part, as follows:

"1.   Harry Bock is ready and willing and does hereby pay over to Party of the First Part the sum of Two Thousand and Twenty five dollars in cash and does give to Hugh Felker Four promissory notes for one hundred dollars each in full settlement and satisfaction of claim of Party of the First Part against Party of the Second Part.

"2.   Party of the First Part agrees to accept and does hereby accept the sum of Two Thousand and Twenty Five Dollars and four notes due successively on Nov. 6, 1937; Nov. 6, 1938; Nov. 6, 1939 and Nov. 6, 1940; each for the sum of One Hundred dollars, in full settlement and satisfaction of any and all claims against Party of the Second Part for shortages, speculations and defalcations caused by Party of the Second Part while in the employee of Party of the First Part to this day and date.

"3.   It is distinctly understood by the parties hereto that this settlement is not made or accepted because of any promises made or threats to enforce any criminal actions but this settlement is only made to satisfy such civil claims Party of the First Part might have against Party of the Second Part.

H. W. Felker
Harry C. Bock"

According to appellant, Bock called him into the back room of the drug store on Saturday morning, November 7th, and presented to him the foregoing instrument, requested him to read and sign it, which he did and that then Bock handed him the draft for $2,000, which he, Bock, had indorsed.   According to the testimony of Bock, he, Bock, went to the bank alone, obtained the draft, payable to himself, and later gave it to Hall.   This was denied by Hall and both Hall and appellant testified that Hall was not in Mt. Morris on Saturday but that on Saturday afternoon appellant

drove to Oregon, Illinois, where he cashed the draft, retained $1,000 and gave the remaining $1,000 to Hall at Beloit, Wisconsin.

Bock continued in the employ of appellant until November 20, 1936. He then went with his wife, his wife's mother and a friend to Florida and in January, 1937 began working for the Wood Drug Company in Rockford, where he was employed at the time of the hearing.

Counsel for appellant argue that in addition to his signed confessions Harry C. Bock's conduct from Wednesday, November 4, 1936 to Saturday, November 7, 1936, both inclusive, was not that of an innocent man and call our attention to the fact that he testified that when there were a lot of customers in the store, he did put the money from sales in his pocket instead of the cash register and that he had taken money out of the cash register with which to buy his meals when he was unable to go home at meal time, which he estimated might amount to about $100 during the years he worked for appellant. Bock's testimony, however, is that the money which he put in his pocket he eventually rung up in the cash register and that this and the taking by him of money for his meals was done with the knowledge and consent of appellant. Appellant testified, however, that his instructions to Bock were that no money was to be taken from the cash register except money to be used to pay for goods which came into the store. Counsel also call our attention to the fact that during the period from November 4th to November 7th inclusive, Harry consulted with his brother, Reuben, with Mr. Dean, the banker, and with Maurice Stewart, and that after so doing he signed the instrument of November 7th and paid the $2,000 to appellant or Hall and delivered to them the notes executed by Reuben and himself. Counsel also point out the fact that on November 5th, Bock loaned his car to Hall and that Hall drove it to Beloit, Wisconsin and on the following day,

by prearrangement, he, Hall, met Bock at the Manhattan Cafe in Dixon and the two returned to Mt. Morris together in Bock's car.

We have read this unusual record with interest. Prior to the time appellant met Hall, appellant regarded Bock, his clerk, as dependable and trustworthy and had for many years, and never suspicioned him of wrong doing and even after he was furnished with his signed confession of guilt, he permitted him to continue in his employ for more than three weeks and frequently left him alone in his store. Bock positively denies that he ever embezzled any money from appellant and other than the circumstances hereinafter referred to and the instruments which he signed and which we have set forth in this opinion there is no evidence in this record that he did embezzle from his employer. His explanation for executing the instruments heretofore set out in this opinion and discounting a perfectly good note secured by a trust deed for $850 less than it was worth and turning over the proceeds thereof amounting to $2,000 to Hall or appellant and for executing, with his brother, four notes aggregating $400 and giving Hall $65 in cash was because he was frightened and nervous and that Hall was the cause of his fright and nervous condition because he told him that he was an embezzler and that unless he fixed it up with appellant, he would go to the penitentiary.

"Duress has been defined as a condition which exists where one by an unlawful act of another is induced to make a contract or perform or forego some act under circumstances which deprive him of the exercise of free will. (14 Cyc. 1123.) Mere annoyance or vexation will not constitute duress, but there must be such compulsion affecting the mind as shows that the execution of the contract or other instrument is not the voluntary act of the maker. (Citing cases.)" *Harris v. Flack,* 289 Ill. 222. The decree in this case found that the

money and notes obtained from appellees by appellant were obtained because Hall accused Harry Bock of embezzling funds from appellant and threatening him with imprisonment unless restitution was made. The evidence sustains this finding in the decree. All that the evidence in this record tends to prove, other than the instruments signed by Bock herein set forth, is that only a nominal sum at the most was ever taken from appellant by Harry C. Bock. As said in *Kronmeyer v. Buck*, 258 Ill. 586, if Bock embezzled any money belonging to Felker, he ought to repay it, but in the absence of convincing evidence that he owes any sum. whatever, and with only proof enough to raise a bare probability that he may owe a trifling amount, a court of equity will not permit Felker to take the law in his own hands and penalize Bock by taking and retaining title to his property. Reuben Bock was an innocent third party. There is no pretense that he was indebted to Felker in any amount. No one can read this record and come to any conclusion other than that he signed these notes solely to keep his brother from being punished for embezzlement, under the belief that if he did sign these notes, his brother would be saved from prosecution. While no promise of immunity may have been expressly made, and while the instrument of November 7, 1936 recites that no promises or threats to enforce any criminal action were made, the evidence, we think, establishes that Hall gave both Harry and Reuben Bock to understand that if they would execute the notes and Harry secure the $2,000 and turn it over to either Hall or appellant, he, Harry, would not be prosecuted and that there was an implied threat, at least, that if that was not done he would be. As said in *Tramblay v. Hyde Park State Bank*, 336 Ill. 80, at p. 90: ''It is not unlawful for the owner of property which has been stolen or embezzled to receive from the criminal payment or part payment for the money or property taken, but if the owner of the property makes

an agreement not to prosecute the criminal if restitution is made that makes the agreement unlawful, and a paper executed, whether a deed or note, under such agreement is not enforcible. (Citing Cases.)''

All the evidence in this record cannot be reconciled. The chancellor had the advantage of this court in that he had the benefit of observing the witnesses and gathering impressions from them and their testimony as the hearing progressed, which we cannot gain from reading the record. In disposing of this case the chancellor stated that he had observed that Harry Bock was of a nervous disposition, easily frightened and he placed credence in the story he told and did not believe Hall's testimony. The conduct or tactics of either Hall or appellant, as disclosed by this record, do not appeal to a court of equity and we hesitate to substitute our judgment for that of the trial court upon questions of fact.

From a careful and painstaking consideration of this record, we are unable to say that the findings of the decree are not sustained by the trustworthy evidence found in this record and the decree appealed from will therefore be affirmed.

*Decree affirmed.*