OSAGE CORPORATION, as Assignee of Beverly Bank Matteson, Plaintiff, v. MICHAEL B. SIMON *et al.*, Defendants and Counterdefendants-Appellants (La Salle National Bank, as Successor Trustee to Northwest National Bank of Chicago, as Trustee, *et al.*, Defendants; First Cook Bank for Savings, Defendant and Counterplaintiff-Appellee).

Second District No. 2—92—0449

Opinion filed April 30, 1993.—Rehearing denied June 15, 1993.

Jay D. Freidin, of Schwartz, Freidin & Associates, and Robert P. Sheridan, of Robert A. Clifford & Associates, both of Chicago, for appellants.

Edward P. Freud, of Ruff, Weidenaar & Reidy, Ltd., and Sylvia Neumann, of Pierce & Associates, both of Chicago, for Osage Corporation.

JUSTICE QUETSCH delivered the opinion of the court:

Defendants, Michael and Heidi Simon, who are husband and wife, are coholders of the beneficial interest in residential property held in trust by La Salle National Bank (La Salle). Osage Corporation (Osage), as assignee of Beverly Bank Matteson (Beverly), sought a judgment foreclosing a trust deed on the property. First Cook Bank for Savings (First Cook) filed a counterclaim to foreclose a mortgage on the same property.

Osage received a judgment of foreclosure which defendants did not appeal. The trial court next awarded a judgment of foreclosure to First Cook, dismissing as legally inadequate the Simons' affirmative defenses to First Cook's claim (see Ill. Rev. Stat. 1991, ch. 110, par. 2—615).

On appeal, the Simons argue that, because their affirmative defenses to First Cook's action are legally sufficient, the court should not have entered judgment as a matter of law for First Cook. We

hold that the Simons adequately alleged that First Cook's mortgage was invalid because it was the result of duress against Heidi Simon. We reverse the judgment for First Cook and remand for further proceedings on First Cook's action.

On May 14, 1990, Beverly filed a complaint to foreclose its trust deed on the property, alleging that the property secured a $65,000 note which was in default. Appended to the complaint were a copy of the trust deed, signed by an agent of La Salle, and a copy of the promissory note, which was also signed by a La Salle agent and named the Simons as "individual grantors."

On June 21, 1990, First Cook filed its counterclaim, alleging the following. La Salle owned the property; the Simons owned the beneficial interest in the trust of which La Salle was trustee. The property was subject to a mortgage recorded February 6, 1990; this mortgage secured a debt of $185,890.47 for which Michael Simon alone was personally responsible. The mortgage was in default as the mortgagor had not timely paid principal and interest. As of June 18, 1990, at least $193,946.27 was due First Cook. First Cook requested a judgment of foreclosure plus attorney fees, costs, and expenses.

Attached to the counterclaim were (1) a copy of the mortgage; (2) a legal description of the property; and (3) a copy of the note, dated February 2, 1990, for $185,890.47. The note is signed by Michael Simon but not by Heidi Simon, and it lists Michael Simon as the borrower. An attached "exhibit," also signed by Michael Simon, states that the loan is secured by a mortgage on the property, a lien on a car, and a man's watch.

Horizon Federal Savings Bank (Horizon), one of the named defendants in the counterclaim, filed an answer stating that Horizon, presently in conservatorship with the Resolution Trust Corporation, currently held an interest in the property under a mortgage dated October 23, 1978, and recorded November 21, 1978. Horizon asserted further that it was the owner and holder of a note dated October 23, 1991, for an original principal amount of $100,000. The note was executed by Michael and Heidi Simon. Horizon stated that $82,866.60 was now due under the note, with additional interest still accruing. Also, Horizon stated that its mortgage securing the note was superior to any other interest in the property, including First Cook's. Horizon attached a copy of the note, which was signed by both Simons as borrowers, and a copy of the mortgage, signed by both Michael and Heidi Simon and listing both Simons as the "mortgagor."

On September 17, 1990, First Cook moved for a default judgment on its counterclaim, alleging that, after due notice, neither La Salle nor the Simons had filed an appearance or answered the counterclaim. On September 19, 1990, Beverly filed its answer to First Cook's counterclaim, denying that its interest in the property was inferior to First Cook's interest. On September 19, 1990, Beverly also moved for a default judgment on its complaint, asserting that La Salle and the Simons had been duly served but had made no appearance, answer, or pleading.

On September 19, 1990, the trial court granted First Cook a default judgment against La Salle and the Simons. However, the court also granted Beverly leave to file an answer to the counterclaim and gave the Simons until October 10, 1990, to answer the complaint and the counterclaim.

On March 27, 1991, Osage, as Beverly's assignee, moved for summary judgment, alleging that the Simons had not answered the complaint. The trial court granted Osage summary judgment.

On March 27, 1991, First Cook also moved for summary judgment against the Simons on its counterclaim. That same day, the Simons received leave to file their answer to First Cook's counterclaim. The Simons raised several affirmative defenses which contested the validity of First Cook's mortgage. They admitted that Michael Simon was the guarantor of a valid and outstanding debt of $185,890.47 owed under a note to First Cook from American Sports, Ltd., whose president was Michael Simon. The Simons also admitted that, as of February 1, 1990, American Sports, Ltd., was in default of its obligations under the note.

The Simons, however, argued that the mortgage securing the otherwise unsecured obligation was invalid. They alleged that, on February 1, 1990, Michael Helikias and Robert Sherrill, respectively the vice-president and the owner of First Cook, demanded immediate repayment from Michael Simon, falsely claiming that Simon and Robert Loffredi, then president of First Cook, had conspired to obtain the money by defrauding First Cook. Helikias and Sherrill threatened that, unless the Simons immediately executed a note and mortgage for the amount in default, the officials would cause the matter to be turned over to the Federal Bureau of Investigation. Thus, according to the Simons, Michael Simon signed the note and mortgage as a direct result of duress by First Cook's agents.

Attached as an exhibit to the affirmative defenses is a copy of a statement written by Michael Simon and signed by him and Loffredi. The statement, dated 4 p.m. February 1, 1990, reads:

"I am signing these said notes \*\*\* under the duress of threat of prosecution if I do not sign the $185,890.47 mortgage note on my home.

I was further instructed by Michael Halekias [*sic*] and Robert Sherrill VP. that if I do not sign these notes \*\*\* I would be turned over to the FBI immediately and I would be in jail tonight.

They also further stated in the presence of others that I had purposely obtained these loans with the intent to defraud First Cook Bank. Wich [*sic*] was never my intention. They also stipulated the President of the Bank was Quote in on this."

On April 11, 1991, First Cook moved to dismiss the affirmative defenses as legally inadequate to allege a claim of duress. First Cook maintained that the mere threat to initiate a criminal proceeding by means available to all members of the community cannot constitute duress. On April 29, 1991, the trial court struck the affirmative defenses with leave to replead.

On May 13, 1991, the court entered a judgment of foreclosure and sale in favor of Osage. It reserved a ruling, pending resolution of First Cook's counterclaim, on whether First Cook's interest in the property was superior to Osage's interest.

The Simons filed amended affirmative defenses, which were stricken with leave to replead. First Cook stipulated that Horizon's interest in the property was superior to First Cook's.

On February 21, 1992, First Cook moved for a ruling on its motion for summary judgment. On March 16, 1992, the court entered a judgment of foreclosure and sale. The court held that First Cook had a valid mortgage and that Osage's lien was subordinate to First Cook's. The court stated there was no just reason to delay enforcement or appeal of the order (see 134 Ill. 2d R. 304(a)). Also that day, the court entered summary judgment against the Simons on First Cook's counterclaim. The order stated that the judgment would become final unless, within 14 days, the Simons filed legally sufficient affirmative defenses.

On March 30, 1992, the Simons filed their second amended affirmative defenses to First Cook's counterclaim. The Simons alleged that the mortgage was invalid because it was the product of duress exerted upon Heidi Simon, who was not liable on the original debt and was innocent of any alleged wrongdoing. The Simons specifically alleged the following. By means of a false threat of criminal prosecution, Helikias and Sherrill forced Michael Simon to direct

La Salle to execute the mortgage that First Cook sought to foreclose. Helikias and Sherrill used the threat of criminal prosecution to force Michael Simon to execute personally a note in the amount of the consideration set forth in the mortgage. Immediately after these actions, which took place at First Cook's Chicago office, Helikias and Sherrill directed Michael Simon and Loffredi to the Simons' residence, where Heidi Simon was told that Michael Simon would immediately be turned over to the Federal Bureau of Investigation for prosecution and incarceration unless she agreed to sign a direction authorizing La Salle to execute the mortgage that First Cook now sought to foreclose.

The Simons argued second that, because the above-described actions of First Cook's officials were fraudulent and in bad faith, First Cook had "unclean hands" and could not invoke equitable relief against Heidi Simon.

The Simons' third affirmative defense, on which both Michael Simon and Heidi Simon relied, was that the mortgage and underlying transaction were invalid as not in compliance with regulation Z of the Federal Truth in Lending Act, contained in the Consumer Credit Protection Act (15 U.S.C.A. §1601 *et seq.* (West 1982)). The Simons asserted that regulation Z required First Cook to inform the Simons of their right to rescind a credit transaction involving a security interest and that First Cook had not done so. As the right to rescind was still available, the Simons declared they were now rescinding the mortgage; thus, the mortgage was no longer valid or binding.

First Cook moved pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—615) to dismiss the affirmative defenses. First Cook argued as before that the Simons did not adequately plead duress. First Cook also maintained that the Truth in Lending Act did not apply because the mortgage and note were undertaken for a business or commercial purpose, although secured by the Simons' residence.

First Cook also moved pursuant to section 2—619(a)(9) of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—619(a)(9)) to dismiss the affirmative defenses. Included with the motion was a February 2, 1990, hypothecation agreement signed by both Michael and Heidi Simon as "pledgor," *i.e.*, 100% owner of the beneficial interest in the property subject to First Cook's mortgage. The agreement states that pledgor hereby "hypothecates, pledges, assigns, delivers and transfers" the property to the pledgee, First Cook. The agreement also states that "[i]n the event

of any default [by the Simons under the note or loan documents], Pledgee shall have all the remedies for enforcement as provided in the Note and the Loan Documents. Pledgee's rights under this Agreement, the Note, and the Loan Documents shall be cumulative." First Cook also attached a copy of a February 2, 1990, "business purpose affidavit" signed by Michael Simon. Finally, First Cook appended an affidavit from a corporate officer stating his personal knowledge that the copies of the hypothecation agreement and business purpose affidavit were true and correct and that the documents were prepared and signed in the ordinary course of First Cook's business.

On April 13, 1992, the trial court dismissed with prejudice all of the affirmative defenses. The court held that there was no just reason to delay either "the enforcement of the judgment of foreclosure and sale, or the appeal of this final order." On May 13, 1992, the Simons filed their amended notice of appeal from the orders of April 13, 1992, and March 16, 1992.

The Simons argue that the trial court erred in holding that their second amended affirmative defenses were legally inadequate. They concentrate on their allegation that First Cook's threat to seek criminal proceedings against Michael Simon coerced Heidi Simon into agreeing to the mortgage and that the mortgage was invalid as the product of duress exerted upon a blameless party whose consent was necessary to the mortgage.

■■ Before examining this argument, we hold the trial court properly dismissed the Simons' other affirmative defenses. That First Cook did not follow a regulation of the Truth in Lending Act is of no moment. The Truth in Lending Act does not apply to extensions of credit primarily for business or commercial purposes. (15 U.S.C.A. §1603(1) (West 1982).) The record, including Michael Simon's affidavit of business purpose, leaves no doubt that the loan on which the mortgage was based was extended for business purposes (for American Sports, Ltd.), and the fact that it was secured by a mortgage on residential property is not material. See *Northwest Federal Savings & Loan Association v. Weisberg* (1981), 97 Ill. App. 3d 470, 475-76.

The argument that First Cook is barred by "unclean hands" from enforcing its mortgage depends on the allegation that First Cook procured the mortgage by duress. We need not consider the argument separately. See *Weisberg*, 97 Ill. App. 3d at 476.

We now consider whether the Simons alleged sufficiently that the mortgage was the product of duress upon Heidi Simon. We note

preliminarily that the legal sufficiency of a pleading is a question of law; a court should dismiss a pleading only if it clearly appears that no set of facts based on the pleading will entitle the claimant to relief. (*Beverly v. Reinert* (1992), 239 Ill. App. 3d 91, 99.) Thus, whether the mortgage actually was a product of duress is not the issue here; we consider only whether the Simons adequately set out such an affirmative defense, entitling them to a factual determination of the matter.

■ A contract will be voided if it is the product of duress. (*Ekl v. Knecht* (1991), 223 Ill. App. 3d 234, 241.) Duress exists if a party is induced by the wrongful act of another to make a contract under circumstances which deprive the party of her exercise of free will. (*Ekl*, 223 Ill. App. 3d at 241; *First Security Bank v. Bawoll* (1983), 120 Ill. App. 3d 787, 793; *Corn Belt Lumber Co. v. Doty* (1918), 212 Ill. App. 521.) A wrongful act need not be an illegal act, but may include one that is wrongful in a moral sense. *Kaplan v. Kaplan* (1962), 25 Ill. 2d 181, 186; *Ekl*, 223 Ill. App. 3d at 241.

■ We believe that case law establishes that the Simons adequately alleged that the mortgage is invalid because First Cook procured it by exerting duress upon Heidi Simon. The debt for which Michael Simon was alone responsible was originally unsecured. The mortgage gave First Cook security for the debt, but gave Heidi Simon nothing in return. The Simons allege that Heidi Simon agreed to direct La Salle to execute the mortgage because she was in fear that, otherwise, Michael Simon would face criminal prosecution. Several cases establish that this is a valid allegation of duress.

In *Kronmeyer v. Buck* (1913), 258 Ill. 586, Buck accused his employee Kronmeyer of stealing from Buck's business. With Kronmeyer in Buck's office, Buck threatened to send Kronmeyer to prison (with the aid of a police officer stationed outside the door) unless Kronmeyer executed a deed conveying property to Buck. Buck then demanded that Kronmeyer and a cosigner execute a note for $1,500. They went to the home of Mrs. Staehle, Kronmeyer's sister. Kronmeyer told his sister that if she did not sign the note, he would go to jail. The plaintiffs, Kronmeyer and Mrs. Staehle, sued to set aside the note as a product of duress.

The supreme court held first that Buck used duress to secure Mrs. Staehle's consent to the note. The court stressed that she was an innocent third party who was not indebted to Buck in any amount. Noting that Mrs. Staehle signed the note to keep her brother out of jail, the coercive atmosphere under which she signed the note, and the suddenness with which she was informed of her

brother's circumstances, the court reasoned that it was "but natural that she would cling to her brother and seek to aid him *** under the pressure of his importunities ***. *** While no promise of immunity was expressly made, yet it is perfectly clear that both she and Kronmeyer were influenced by the understanding, which was clearly to be implied, that if the matter was adjusted satisfactorily Kronmeyer would not have to go to jail or be prosecuted." *Kronmeyer*, 258 Ill. at 595-96.

The court also held that Kronmeyer himself would be able to set the note aside if he executed the note in order to avoid prosecution for the crime that he had not committed. *Kronmeyer*, 258 Ill. at 597.

In *Corn Belt Lumber Co. v. Doty* (1918), 212 Ill. App. 521, the appellate court, without citing *Kronmeyer*, upheld a verdict allowing the defendant to avoid an obligation under a promissory note that she signed as surety for her husband. The court observed that the note that the defendant signed was worth more than twice what her husband owed the plaintiff's predecessor in interest; the court noted further that the defendant had testified that she signed the note only because the plaintiff's predecessor threatened to institute criminal proceedings against her husband. Adopting the rule of *Adams v. Irving National Bank* (1889), 116 N.Y. 606, 23 N.E. 7, the *Corn Belt* court held that it was well settled that one spouse may avoid a contract induced by the threat of the imprisonment of the other spouse, whether the threat is of a lawful or unlawful imprisonment. *Corn Belt*, 212 Ill. App. at 523; *Adams*, 116 N.Y. at 611-12, 23 N.E. at 8-9; *Triad Distributors, Inc. v. Conde* (1977), 56 A.D.2d 648, 391 N.Y.S.2d 897 (wife may avoid mortgage obtained by threats of imprisoning her husband, whether the threats were of a lawful or unlawful imprisonment).

In *Bock v. Felker* (1939), 302 Ill. App. 116, the appellate court, relying in part on *Kronmeyer*, held that Reuben Bock was entitled to avoid the obligation of notes that he and his brother, Harry Bock, whom the creditor had accused of embezzlement, cosigned. The court emphasized that there was no dispute that Reuben Bock had never been accused of wrongdoing and that the evidence compelled the conclusion that Reuben Bock cosigned the notes solely to keep his brother from being prosecuted. *Bock*, 302 Ill. App. at 127.

The aforementioned cases establish that defendants raised a legally sufficient affirmative defense to First Cook's action on the mortgage. We find First Cook's attempts to distinguish these cases unconvincing.

First Cook argues that the affirmative defense of duress was insufficient because there is no allegation that Heidi Simon shared in the power of direction of the beneficial interest. First Cook has waived this challenge to the sufficiency of the pleading by waiting until appellate review to raise this argument. (See *Yassin v. Certified Grocers of Illinois, Inc.* (1988), 178 Ill. App. 3d 498, 511-12, *aff'd in part & rev'd in part on other grounds* (1990), 133 Ill. 2d 458.) Waiver aside, this argument lacks merit. The affirmative defense can be read reasonably only to state that Heidi Simon's direction was necessary to La Salle's execution of the mortgage. Moreover, it would make no sense for First Cook's agents to seek Heidi Simon's agreement or knowledge of the mortgage were the entire power of direction lodged with Michael Simon. Finally, the record establishes that Michael and Heidi Simon are coholders of the beneficial interest in the land trust and that both signed certain documents as "pledgor" or "co-grantors."

First Cook also argues that *Doty* is distinguishable because the note involved there was for more than twice the original debt owed by the husband. A fair reading of all the cases we have cited, including *Doty*, makes it clear that this evidence, though it supported the finding of duress, was not essential to a finding of duress. Here, in any event, the facts as alleged are also one-sided; First Cook received security for an otherwise unsecured loan (owed by a person who had filed for bankruptcy) with no apparent corresponding benefit to defendants other than First Cook's implicit promise not to institute criminal proceedings against Michael Simon.

First Cook argues further that there is no duress where there has been no arrest of the debtor or pending warrant for the debtor and the creditor simply threatens to invoke the same criminal process that is available to the public generally. (See *Youngs v. Simm* (1891), 41 Ill. App. 28.) However, the cases we have examined make it manifest that this rule forecloses the defense of duress only for the debtor who is threatened with the consequences of nonpayment; it does not prevent a spouse from arguing duress based on the threatened action against the debtor-spouse. See *Kronmeyer*, 258 Ill. at 595-96.

Finally, First Cook maintains that this case is distinguishable from the type of situation involved in *Doty* because here the transaction involved a governmentally insured lender rather than a private lender. First Cook never explains why this fact is relevant to whether the Simons have adequately alleged that Heidi Simon signed the mortgage because her will was overborne by First

Cook's threats. Obviously, there is no difference from her perspective whether the threat emanated from an insured lender or a private party. The argument and the cases cited by First Cook on this issue are simply irrelevant to the facts presented and alleged here.

We conclude that the Simons adequately alleged that the mortgage should be set aside because it was procured by duress against Heidi Simon. Because the trial court's grant of summary judgment for First Cook was premised on its finding that the affirmative defenses were legally insufficient, the judgment is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

UNVERZAGT and WOODWARD, JJ., concur.