[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
The plaintiff has moved for summary judgment in this foreclosure action on the grounds that there are no genuine issues as to any material fact and it is entitled to judgment as a matter of law.
Under Practice Book Section 384, a party is entitled to summary judgment at any time "if the pleadings, affidavits, and other proofs show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." A material fact is one that will make a difference in the CT Page 11603 outcome of the case.
Notwithstanding the defendants' argument to the contrary, there are no issues of material fact. The parties generally agree on what the facts are, but disagree as to the legal conclusions which flow from those facts.
On or about July 5, 1998 Saybrook Bank and Trust Company loaned the defendants, Angus L. McDonald and Gary P. Sharpe, and one Andrew C. Black the amount of two hundred and fifty thousand dollars ($250,000), as evidenced by their promissory note dated on said date payable to the order of Saybrook Bank and Trust Company ("Note"). The Note provides that the unpaid balance due thereunder, together with accrued interest, if not sooner paid, is expressly due and payable on August 1, 1991. To secure the, indebtedness evidenced by the Note, the defendants Gary P. Sharpe and his wife, Carol Sharpe, on July 5, 1988 executed a mortgage deed of their residence in Chester, Connecticut to Saybrook Bank and Trust Company (the "Chester Mortgage"). By agreement dated July 31, 1991, the Note and Chester Mortgage were modified to allow for a change in the payment schedule in the Note and an extension of the maturity date to August 1, 1996.
In addition to the mortgage deed executed by the Sharpes, the defendants Angus L. McDonald and his wife, Mary McDonald, also executed a mortgage deed to secure the indebtedness evidenced by the Note. That deed was executed on July 5, 1988 and conveyed to Saybrook Bank and Trust the McDonalds' residence in Old Lyme, Connecticut (the "Old Lyme Mortgage"). The Note and Old Lyme Mortgage were also modified by agreement dated July 31, 1991 to allow for a change in the payment schedule in the Note and an extension of the maturity date to August 1, 1996.
On April 20, 1993, the Federal Deposit Insurance Corporation (the "FDIC") as Receiver of Saybrook Bank and Trust Company endorsed the Note to the order of First Commerce of America, Inc.
The defendants have defaulted under the terms of their respective loan documents for failure to make the monthly payments called for in the loan documents. The plaintiff has exercised its option to accelerate the Note.
The defendants each allege as their First Special Defense that the Plaintiff and/or its predecessors in interest failed to comply with the disclosure requirements set forth in state and federal CT Page 11604 truth in lending laws, and regulations promulgated thereunder, Connecticut General Statutes §§ 36-393 et seq. and 15 U.S.C. § 1601et seq.
The truth in lending laws cited above do not apply here because the subject transaction was primarily for a commercial purpose. The makers of the Note acknowledged the commercial nature of the transaction when they executed the Note, which provides "BORROWER[S] . . . ACKNOWLEDGE THAT THE LOAN EVIDENCED BY THIS NOTE IS A COMMERCIAL TRANSACTION." "Commercial transaction" is defined by Connecticut General Statutes § 52-278a(a) to mean any transaction which is not "a transaction in which a natural person obligates himself to pay for goods sold or leased, services rendered or moneys loaned for personal, family or household purposes."
The Truth in Lending Act contains an express exemption for "[c]redit transactions involving extensions of credit primarily for . . . commercial. . . purposes." 15 U.S.C. § 1603 (1); Connecticut General Statutes § 36-393b(b) (adopting the federal exemptions).
The specific disclosure requirements which the defendants claim were violated by Saybrook Bank and Trust Company apply only to "consumer credit transactions." See 15 U.S.C. § 1631, 1632,1638(b)(1). A "consumer credit transaction" is defined to mean a transaction "in which the party to whom credit is offered or extended is a natural person and the money . . . which [is] thesubject of the transaction [is] primarily for personal, family orhousehold purposes." 15 U.S.C. § 1602 (h) (emphasis added).
There are no decisions on point by appellate courts of this state. However, courts in other jurisdictions have addressed the applicability of the Truth in Lending Act to a commercial transaction when the collateral consists of the residence of the borrower or the borrower's spouse.
In Osage Corp. v. Simon, 245 Ill. App.3d 836, 184 Ill. Dec. 453,613 N.E.2d 770 (1993) the Appellate Court of Illinois held that the Truth in Lending Act "does not apply to extensions of credit primarily for business or commercial purposes."613 N.E.2d at 774. The Court found that the affidavit of the husband-borrower indicated that the loan in question was extended for business purposes and "the fact that it was secured by a mortgage on residential property is not material." Id. In CIT FinancialServices, Inc. v. Bowler, 537 So.2d 4 (Ala. 1988) the Supreme Court CT Page 11605 of Alabama held that a loan secured by a second mortgage on a home jointly owned by the borrower and his spouse was a commercial loan exempt fromn [from] the Truth in Lending Act disclosure requirements where the loan application revealed that the purpose of the loan was to finance the borrower's medical practice.
The defendants do not deny that the money was loaned for a commercial purpose. However, they argue that because the collateral given to secure the commercial loan were residences, that the mortgages executed by Carol Sharpe and Mary McDonald were consumer transactions. They have presented no law to support such an argument. From the state and federal statutes and case law set forth above, it is clear that the focus of the analysis to determine the commercial or consumer nature of a transaction is thepurpose of the loan and not the nature of the collateral.
The defendants have also alleged that in attempting to secure payment of the Note the plaintiff violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., (the "FDCPA"). However, the FDCPA only applies to "consumers" who are natural persons obligated to pay any "debt." See 15 U.S.C. § 1692b, 1692c. The FDCPA defines a "debt" to mean "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, orhousehold purposes." 15 U.S.C. § 1692a(5) (emphasis added).
The transaction which is the subject of this foreclosure action was primarily for a commercial purpose, as the Note indicates. The residential nature of the collateral used in the transaction does not convert the purpose of the loan to Angus McDonald, Gary Sharpe, and Andrew Black. A debt arising from a lending transaction where the loan proceeds were used to advance a commercial purpose is simply not "an obligation . . . to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes" regardless of whether the transaction created a security interest in a residence and thereby had some personal, family or household consequences. See 15 U.S.C. § 1692a(5). Here, it is undisputed that the borrowers used the loan proceeds to advance a primarily commercial purpose. As under the Truth in Lending Act, the nature of the collateral does not transform the purpose of the loan transaction. Therefore, the FDCPA is inapplicable to the Note and Mortgages in this case. CT Page 11606
The defendants, Mary McDonald and Gary Sharpe as Executor of the Estate of Carol S. Sharpe, allege in their Third and Fourth Special Defenses that the Chester and Old Lyme Mortgages and subsequent mortgage modification agreement were "executed, signed, and delivered without consideration on the Plaintiff's part." Consideration consists of a benefit to the party promising, or a loss or detriment to the party to whom the promise is made.Gianetti v. Norwalk Hospital, 211 Conn. 51, 61, 557 A.2d 1249
(1989). Under the foregoing principle, consideration for a mortgage may consist of a loan made to one other than the mortgagor. State Street Mortgage Co. v. Matrix Dev. corp. ,4 Conn. L. Rptr. 508
1991 WL 188773, at *1 (Conn.Super.Ct. Aug. 21, 1991, Katz, J.)
The defendants have presented no authority to support their claim that a mortgage deed is invalid if the consideration for the mortgage note did not flow to the mortgagor. In advancing their argument that the mortgage is invalid if the mortgagors are not liable on the note which is secured by the mortgage, the defendants seem to assume that the requirements for a valid note and mortgage deed are identical. This is certainly not the case.
"A note and a mortgage given to secure it are separate instruments, executed for different purposes . . ." Mechanics Bank v.Johnson, 104 Conn. 696, 701 (1926). A negotiable instrument is an unconditional promise or order to pay a fixed amount of money. Connecticut General Statutes § 42a-3-104. Most mortgage notes, including the Note at issue here, are negotiable instruments. However, a mortgage deed is not invalid just because it fails to secure a negotiable instrument. The dispositive question in examining the validity of a mortgage is whether it provides "reasonable notice" to third parties of the obligation that is secured. . . Dart Bogue Co. v. Slosberg, 202 Conn. 566, 578-79,522 A.2d 763 (1987); Devlin v. Wiener, 232 Conn. 550, 555, (1995).
In Dart Bogue Co. v. Slosberg, supra, the Connecticut Supreme Court defined "reasonable notice" as notice of the nature and amount of the encumbrance which the mortgagor intends to place upon the land. The Court further stated that the "nature" of a secured debt includes such fundamental characteristics as whether the debt is absolute or contingent, liquidated or unliquidated, or whether it is given to secure an existing liability or future advances. The Court in Devlin, supra at 556, held that a mortgage could be valid even if the debt could not be definitely ascertained. CT Page 11607
By signing the mortgage deed, but not the Note, Mary McDonald and Carol Sharpe did not obligate themselves to repay the Note. The plaintiff may seek to satisfy the amounts due under the Note only from the value of the mortgaged property. It may not seek from Mary McDonald or the estate of Carol S. Sharpe any deficiency in the amount due under the Note over and above the property value. By signing the mortgage deed, but not the Note, Mary McDonald and Carol Sharpe essentially became accommodation parties. Under the Uniform Commercial Code "the obligation of an accommodation party may be enforced. . . whether or not the accommodation party receives consideration for the accommodation." Connecticut General Statutes § 42a-3-419 (b). Since the obligation of an accommodation party may be enforced regardless of whether or not the accommodation party receives consideration, a mortgage by an accommodation party to secure that obligation may be enforced whether or not the accommodation party received consideration. The outcome should be the same here where the makers' spouses are the functional equivalent of accommodation parties.
For the foregoing reasons, the court finds that there are no material issues of fact and the plaintiff is entitled as a matter of lf law to summary judgment on the Complaint as to liability only.