2022 IL App (1st) 211403
Opinion filed December 30, 2022

SIXTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| SET ENVIRONMENTAL, INC., | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 20 L 00927 |
| POWER CARTAGE, INC., | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Margaret A. Brennan, |
| | | Judge, presiding. |

JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Justices Mikva and Tailor concurred in the judgment and opinion.

**OPINION**

¶ 1       Defendant Power Cartage, Inc. (Power) appeals the trial court's grant of summary judgment in favor of plaintiff Set Environmental, Inc. (Set). This appeal arises from a work authorization form drafted by Set and signed by Power, for a cleanup by Set, of a fuel spill from a Power truck on a highway near Sugar Gove, Illinois. On appeal, Power argues that the trial court erred in finding that no genuine issue of fact exists such that a trial was not needed. Power argues that Set's work authorization form was not a valid contract because (1) it lacked essential material terms, (2) it was unconscionable and, hence, void; and (3) it was signed under

duress. For the following reasons, we affirm in part, reverse in part and remand for further proceedings consistent with this opinion

¶ 2                                                    BACKGROUND

¶ 3            Set filed a complaint on January 22, 2020, in the circuit court of Cook County alleging that it is an Illinois corporation with offices in Cook County, that it provides environmental services, and that Power is an Illinois corporation with offices in Chicago. The complaint set forth only one count which was for breach of contract.

¶ 4            Set's verified complaint alleged that on August 30, 2019, Power contacted Set about a clean-up at or near I-88 in Sugar Grove, Illinois, and that Power hired Set for the clean-up pursuant to a written contract which Set attached to its complaint as Exhibit A. Set alleged that it performed the work and sent Power a bill for $114,597.26, which Set attached to the complaint as Exhibit B. Set alleged that Power paid nothing and, thus, Set sought the amount of the bill, plus attorneys' fees, costs and interest.

¶ 5            The first part of Exhibit A is a form entitled "Set Work Authorization," which is 5 pages long and appears to be signed by Chris Fogu on August 30, 2019. The next two pages of Exhibit A contain a list of fees per hour or per shift for a variety of possible services, personnel and equipment. The bottom of each page of the list contains the initials "C.F." and the date "8/30/19." The last two pages of Exhibit A are a two-page document entitled "Addendum to Standard and Emergency Schedule of Fees." The bottom of each page of the addendum appears to bear Fogu's initials and the date.

¶ 6            The three documents in Exhibit A—the authorization, the list of fees and the addendum—are forms that contain blank spaces for only the customer's name, address and initials. The forms do not contain blank spaces to fill in: the site or address of where the work

was to be done; the type of incident which led to the need for services; a description of the contemplated work at the site; the date of the trigging incident; or the expected schedule or time frame for completion of work.

¶ 7 The subtitle of the first document in Exhibit A, which is the "Authorization" form, states that it is for both "Emergent and Non-Emergent Work." The first line of the form begins: "The undersigned authorized agent (the 'Owner') as owner or authorized agent as represented by signing this agreement for the titleholder of the area, surrounding area or any contaminated area that appears to be related (hereafter, the 'Premises') authorizes ***." Neither party alleges that Fogu or Power was the owner of, or owner's agent for, I-88. Next, the form states that the " 'Owner' " authorizes Set "to undertake any and all work required to estimate, evaluate and restore the surface, subsoil, any structures or waters located at or near the Premises." No address or road is identified for the "Premises"

¶ 8 Paragraph A of the "Authorization" form is entitled "Continuing Work Authorization" and it states in relevant part: "Set is further authorized to continue with restoration and remediation of the Premises after the date of this authorization, with such continuing work to be agreed upon according to Set's scope or by any subsequent written revised scope, the terms of which shall be agreed upon between Set and Owner or as directed by any legal authority as soon as possible." The "Authorization" form ends by stating that it "constitutes the entire Agreement between the parties" and no addition or modification may be made unless in writing and signed by both parties. While the form is signed by Fogu on behalf of Power, the signature line for Set is blank.

¶ 9 The next two documents in Exhibit A, which are the list of fees and the addendum, do not contain any blank spaces, except for spaces at the bottom of each page for initials and the

date. Like the first document, the subsequent two documents do not contain a space in which a site location could be filled in, or in which any other identifying project information could be inserted. The fees list states that it contains the fees for: "Emergency Response Services/Specialty Field Services/Compressed Gas Cylinder Services/ Customized Waste Management."

¶ 10        Exhibit B contains two invoices totaling $114,597.26, which is the amount that Set sought in its complaint. The first of these two invoices, dated October 9, 2019, is for $44,042.35, and states that it contains the "[c]harges for emergency response services provided for a diesel spill clean up[1] beginning on August 30, 2019." The invoice states that it includes a number of different "field ticket[s]," with a separate field ticket for each day. The ticket for August 30 is $1,413; for September 4, $936; for September 6, $207; for September 12, $115; for September 13, $520; for September 17, $230; for September 20, $791.30; for September 23, $29,512.65; for September 26, $4,822.80; and, for September 27, $5,494.60.

¶ 11        The second of these two invoices, dated December 12, 2019, states that it is for $70,554.91, and that it contains the "[c]harges for a diesel spill cleanup beginning on August 30, 2019." It also includes a number of different field tickets. The first ticket, entitled "analytical review," does not have a date and is for $115. There are two tickets for October 9; the first is $2,640.90; the second is $563.50. The ticket for October 10 is $1,431.85; for October 16, $414; for October 17, $138; for November 6, $460; for November 14, $16,600.50; for November 15, $945; for November 19, $172.50; for November 26, $201.25; for November

---

[1] This is not a typo. The first invoice states "clean up" as two words, while the second invoice states "cleanup" as one word.

27, $172.50; for December 3, $27,630.79; for December 4, 2019, $3,276.10; for December 6, $4,024.75; and, for December 10, $11,768.36.

¶ 12        Lastly, Exhibit B contains a third invoice, which is labeled "Proposal Only," and is dated January 9, 2020. The "Proposal Only" invoice, which is for $33,176.55, has a note handwritten across the bottom that says: "Not to exceed proposal to complete work in Spring of 2020." Under the note is an empty signature line; and under the empty signature line are the words "Customer Approval" and "Date."

¶ 13        On April 6, 2020, Power filed a verified answer with affirmative defenses. Power admitted that it contacted Set to perform certain work at or near the location described in Set's complaint but denied the remaining allegations or asserted that it had insufficient knowledge to respond. Power also alleged affirmative defenses of duress, unconscionability and no meeting of the minds. The answer was verified and signed by Chris Fogu.

¶ 14        In Power's answers to Set's interrogatories, which were signed by Fogu and dated July 30, 2020, Power stated that Power's driver was involved in the subject spill. In Power's response to Set's request to produce documents, Power attached an email from David Cozzi, a senior environmental analyst with Set, to "Chris," dated Monday, October 21, 2019. The email stated, in full:

> "Attached is a finalized PARTIAL invoice for the emergency response and subsequent remediation efforts to clean up the diesel fuel release from August 30th. This invoice covers charge[s] from August 30-Sept. 30. Additional charges to be invoiced in October will be T&D of the remaining roll-off boxes, analytical review/reporting, and any other onsite work performed.

Now that I have your authorization to proceed with the balance of the clean up by first applying for the Tollway Authority land closure permit, I will keep you posted."

The attachment consisted of a five page document entitled "Invoice Preview" that was dated September 25, 2019, and ended with a grand total of $38,540.86.

¶ 15   Set moved to dismiss Power's affirmative defenses for lack of specificity, among other things.[2]   On September 21, 2020, Power filed a response, and, on September 28, 2020, Set filed a reply.  However, on November 13, 2020, Power filed amended affirmative defenses with greater specificity.  The verified amended defenses were signed by Fogu.

¶ 16   In its verified answer, Power alleged the following.  A tractor trailer operating under Power's "dispatch" was involved in a vehicle "incident" resulting in a fuel spill that "created an emergency situation requiring immediate action."  An Illinois state police officer on the scene "demanded" that Power "remediate the fuel spill promptly" and recommended that Power contact Set, which Power did.  When Power asked Set to provide price estimates and information regarding the work to be done, Set said that it would not provide such information prior to visiting the site and that it would not visit the site unless Power executed Set's contract. With respect to Power's first affirmative defense of duress, Power claimed that Set knew or should have known that Power was faced with an emergency situation and that Power was not engaged in, or "sophisticated" regarding, environmental clean-ups, and that Set still demanded that Power execute Set's contract without an explanation of the potential work or price.

¶ 17   With respect to the second defense of unconscionability, Power noted that the contract authorized Set "to undertake any and all work required."  Power claimed that Set drafted the

---

[2] The appellate record contains an order, dated August 20, 2020, directing Power to respond to Set's motion to dismiss.  While Set's motion is not in the record before us, Power's response and Set's reply are.

contract and was in a superior bargaining position, while Power was in an emergency situation and presented with the contract on "a 'take it or leave it' " basis. With respect to the third defense of "no meeting of the minds," Power alleged that it believed the spill to be a minor spill of 40 gallons of fuel, that Set did not outline the scope of the work in its contract, and that Set believed that the work and costs associated with "environmental remediation *** would be substantially more than [Power] anticipated." .

¶ 18     In April 2021, the parties took the discovery depositions of (1) Chris Fogu, Power's vice president; (2) Angel Camacho, a customer service representative with Set; (3) Dave Cozzi, an accounts manager with Set; and (4) Mike O'Dwyer, Set's chief financial officer. At his deposition, Fogu was asked what the state trooper had said to him that he believed was a demand, and Fogu replied:

"FOGU: Well, the first part is that he was an Illinois state trooper on an accident scene and he was telling me what needed to be done. And then I—that was a demand to me. I follow the police orders, so.

[SET'S COUNSEL]: *** What words were used that you considered to be a demand?

FOGU: 'Get somebody out right away, a cleanup crew out here right away.'

[SET'S COUNSEL]: Okay. Anything else?

FOGU: No. I mean, I didn't know what repercussions would be if I didn't. And I—it was—I was following a state police order."

Fogu further stated that the state trooper "was telling me I had to get somebody out there, that it was a chemical situation, so I had to get somebody out there as quick as possible." Fogu stated that the trooper "told" him to "call Set." Fogu stated that he had dealt with a fuel spill

7

only once before. The prior spill was eight years ago, and the Chicago Fire Department "took care of that."

¶ 19          On June 29, 2021, Set moved for summary judgment on a number of different grounds, including that an act cannot constitute duress unless it is wrongful. Power also moved for summary judgment, and each side responded and replied to each other's motion. The motions, responses, and replies are all part of the appellate record. On September 30, 2021, the trial court issued a written order that stated simply:

"1. [Power's] Motion for Summary Judgment is DENIED;

2. [Set's] Motion for Summary Judgment is GRANTED;

3. A judgment award for damages in the amount of $114,597.26 in contractual damages, $44,413.74 in compounding interest on the contractual damages, $21,450.00 in attorney fees and $846.47 in costs for a total damages of $181,325.47 is entered in favor of [Set] and against [Power] on [Set's] complaint for breach of contract; and

4. This is a final order disposing of all claims of all parties."

¶ 20          On October 29, 2021, Power filed a timely notice of appeal, and this appeal followed. The record on appeal contains the common law record and the four deposition transcripts noted above but does not contain transcripts of the proceedings below.

¶ 21                                        ANALYSIS

¶ 22          On appeal, Power raises three issues. First, Power argues that Set's Work Authorization form was not a contract because it omitted essential and material terms and, thus, no meeting of the minds occurred. Second, Power argues that the form was unconscionable and, therefore, void. Third. Power argues that it executed the form under

8

duress and, thus, it was void. For the following reasons, we affirm in part, reverse in part and remand for further proceedings.

¶ 23                                    I. Summary Judgment

¶ 24        The instant appeal involves a summary judgment motion. A trial court is permitted to grant summary judgment only "if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). The trial court must view these documents and exhibits in the light most favorable to the nonmoving party. *DiLorenzo v. Value and Primer Corp.*, 347 Ill. App. 3d 194, 198 (2004) (with summary judgment, "we construe the facts strictly against the moving party and in the light most favorable to the nonmoving party"); *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). Our supreme court has cautioned that "[s]ummary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine*, 154 Ill. 2d at 102. On appeal, we review a trial court's decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 25                                    II. Preliminary Matters

¶ 26        As a preliminary matter, Set argues that we should dismiss Power's appeal because the record on appeal does not contain a transcript of the hearing or the oral arguments before the trial court and because the record also lacks certain briefs.[3] First, since the filing of Set's brief, the record has been supplemented so that it now contains the briefs which Set stated were

---

[3] Set also argues that Power cites additional cases on appeal. We know of no rule or case barring the citation of additional cases, and Set does not cite one for us.

missing. Second, the lack of a transcript of the hearing and the oral arguments before the trial court does not hinder our review since our review is *de novo*. See *Fleet Business Credit, LLC v. Enterasys Networks, Inc.*, 352 Ill. App. 3d 456, 469 (2004) (when the trial court construes a contract as a matter of law, a reviewing court is "unrestrained by the circuit court's judgment.") *De novo* consideration means that we review the same documents and perform the same analysis that a trial judge would perform. *Brummel v. Grossman*, 2018 Il App (1st) 170516, ¶ 43.

¶ 27        Also, both parties discuss at length the unpublished case of *Roberson Construction, LLC v. Ellerby*, 2021 IL App (2d) 191095-U. Illinois Supreme Court Rule 23 (eff. Jan. 1, 2021). Supreme Court Rule 23 provides that unpublished Rule 23 orders are nonprecedential but that, on or after January 1, 2021, they "may be cited for persuasive purposes." Since this case was filed on March 9, 2021, which is well after January 1, 2021, and since both parties cite and discuss this case at length, we will consider whether we find it persuasive on the facts before us.                                    .

¶ 28                                III. Material Terms

¶ 29        To be enforceable, a contract must be sufficiently definite and certain such that a court is able to ascertain from its terms what the parties intended. *DiLorenzo*, 347 Ill. App. 3d at 199-200. If the contract's material terms are too indefinite, allegations of a breach will not support a breach of contract claim. *Babbitt Municipalities, Inc. v. Health Care Service Corp.*, 2016 IL App (1st) 152662, ¶¶ 29-30. Where certainty is lacking in a contract's essential terms, the court will not fill in the missing terms. *Babbitt.*, 2016 IL App (1st) 152662, ¶ 37. Any ambiguity in the terms of a contract will be construed against the drafter which, in this case,

was Set. See *Camelot, Inc. v. Burke Burns & Pinelli, Ltd.*, 2021 IL App. (2d) 200208, ¶ 48 (citing *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 479 (1998)).

¶ 30 In the case at bar, the documents before us establish that Fogu and, by extension, Power, was faced with an emergency situation on a major interstate highway. Consequently, Fogu called upon Set and signed a contract with the intent that Set would address and redress the emergency nature of the spill. This fact was undisputed.

¶ 31 However, Power argued that there was no meeting of the minds specifically with regards to scope or cost. The contract drafted by Set specifically provided that any "continuing work" must be "agreed upon," and yet there was no subsequent agreement. The form stated that Set was authorized to perform "any and all" work "required," without specifying what that work would be or who would judge what was required or even where it was to be performed.

¶ 32 Set argues that there are many contracts where an expert or professional is employed on a per-shift or hourly basis, where the per-hour charge is stated and where the number of hours is not. Set refers to attorney's fees as one example. However, even with attorney's fees, when counsel is retained in an emergency situation, such as an arrest, there is usually some further understanding reached after the initial step, such as a bail hearing, is complete. There is usually some understanding or provision identifying the continuing work that is expected or involved, particularly where the parties have no pre-existing relationship or the paying party has little relevant knowledge or prior relevant experience, as Fogu testified to at his deposition.[4]

---

[4] As noted above, Fogu testified at his deposition that he had had experience with a fuel spill only once before, eight years ago, and the Chicago Fire Department "took care of that."

¶ 33      On appeal, Power relies in part on *Roberson* to support the argument that there was no meeting of the minds about the scope of work where the purported contract contained no definite terms. Interestingly, Set also discusses *Roberson* at length in its brief to us.

¶ 34      In *Roberson*, both parties argued that there was a contract but, after a bench trial, the trial court found that there was none because the parties had never reached a meeting of the minds on a material element of their agreement, namely, the scope of the work. *Roberson*, 2021 IL App (2d) 191095-U, ¶¶ 1-3. The appellate court affirmed on appeal. *Roberson*, 2021 IL App (2d) 191095-U, ¶ 1. In the instant appeal, Power argues that *Roberson* is analogous because the parties here similarly had no meeting of the minds regarding the scope of the work, while Set argues to the contrary.

¶ 35      In *Roberson*, the agreement was "completely blank on the scope of work." *Roberson*, 2021 IL App (2d) 191095-U, ¶ 1. As a result, if one looked just at the agreement, there was " 'nothing' " in it to reveal the scope of work. *Roberson*, 2021 IL App (2d) 191095-U, ¶ 28. "Even assuming that each party admitted that there was a contract they believed to be binding [, that] does not remove from the court's purview the question whether the Agreement was a valid and enforceable contract." *Roberson*, 2021 IL App (2d) 191095-U, ¶ 74. Although the parties "manifested the intent to make a contract," if the contract is "unduly uncertain and indefinite," there is "no contract" for a court to enforce. *Roberson*, 2021 IL App (2d) 191095-U, ¶ 75. When a contract appears incomplete or ambiguous on its face, the parole evidence rule permits evidence extrinsic to the contract to establish additional terms, so long as those terms are consistent with the contract itself. *Roberson*, 2021 IL App (2d) 191095-U, ¶ 77. However, "where the evidence suggests that a material aspect of the contract has not been decided upon, courts ordinarily refuse to supply the missing term." *Roberson*, 2021 IL App

(2d) 191095-U, ¶ 80. In *Roberson*, the parties disagreed about both the amount that the homeowner had agreed to pay and the scope of work that the construction company had agreed to do. *Roberson*, 2021 IL App (2d) 191095-U, ¶ 67. The trial court refused to fill in these material blanks, and the appellate court affirmed on appeal.

¶ 36     As in *Roberson*, in the case at bar, one party's performance of the contract consisted of doing work and the other party's performance consisted of paying for it. Work and payment were the material or essential elements of the contract. Yet, neither the ultimate scope of work nor the ultimate payment was specified in the contract. Set, who drafted the contract, seeks to fill in both blanks with its own bills and invoices. Set argues, in essence, that, by signing the contract, Power gave it a blank check. Whether Set sent a bill for $100,000 or a million dollars, under Set's argument, Power would be obligated to pay it.

¶ 37     Power argues that Set cannot rely on its own invoices to fill in the blanks for the scope of work and the final amount owed. In support, Power cites "the 'four corners' rule," which provides that an agreement, when reduced to writing, is presumed to speak for itself and cannot be changed by extrinsic evidence, particularly where the contract contains an integration clause, as it does in this case. *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462 (1999). An integration clause is a clause which provides that any prior negotiations leading up to the contract are subsumed in the contract and that the contract is complete in itself. *Air Safety*, 185 Ill. 2d at 464-65.

¶ 38     Set argues that the purpose of the invoices was not to fill in the blanks of the contract but to support its claim for damages.[5] This argument is disingenuous because, if no suit had

---

[5] Set's appellate brief argues that the invoices were "produced for Set's damages and not to define the terms of the agreement."

been filed, there would be no claim for damages. The point of the invoices was to demand payment for an amount that was not stated in the contract.

¶ 39     First, we find that Fogu's deposition testimony establishes that Power, through Fogu, "manifested the intent to make a contract" for the initial emergency response. . *Roberson*, 2021 IL App (2d) 191095-U, ¶ 75. Fogu testified that he believed that the clean-up cost would be between five and ten thousand dollars, and that he found the rate sheet confusing. When asked what confused him, he replied: "You know, a 10 dollar[] roll of duct tape. All right. Whatever." Although he thought the initial invoice was high, he acknowledged that, if that first invoice was all there was, he would have paid it, "[b]ut then they kept sending more bills over." Thus, we affirm the trial court insofar as it found a contract for the emergent work done on August 30, the day of the spill.

¶ 40     However, we cannot reach the same conclusion with respect to the non-emergent continuing work. Set's contract specified that Set was "authorized to continue with restoration and remediation of the Premises after the date of this authorization," i.e. August 30, "with such continuing work to be agreed upon." Although the parties "manifested the intent to make a contract" for the initial work, the continuing work was too "uncertain and indefinite" for a court to enforce without a further agreement, as the contract itself required in Paragraph A. *Roberson*, 2021 IL App (2d) 191095-U, ¶ 75. Without any limits at all regarding the ultimate cost or scope of the work except that Set would do what was "required," without any indication of who would ultimately judge or determine what was required, without a further agreement as the contract itself required in Paragraph A for continuing work; and pursuant to our *de novo* review where Set, as both the drafter of the contract and the movant for summary judgment, bears the burden of proof; we have no choice but to reverse the trial court's grant of summary

judgment with respect for the continuing work done days after the initial emergency. The next field ticket is for work done almost a full week after the initial incident.

¶ 41    Based thereon, we reverse and remand to permit Set, if it so chooses, to amend its complaint to add a *quantum meruit* claim as was discussed at oral argument, and to permit Power to engage in discovery regarding costs and damages, if it so chooses.

¶ 42    In the alternative, Power argued that if this court found the contract enforceable, that we should find it unconscionable based on essentially the same grounds, namely, missing terms and Set's "giving itself a carte blanche." However, the contract is conscionable because it authorizes only emergent work and not work after the emergency is taken care of. It is not that the contract itself was inherently unconscionable, but rather that Set did not comply with the express terms that they drafted in Paragraph A, i.e. to obtain a "continuing work authorization" with "the terms of which to be agreed upon between Set" and Power.

¶ 43    IV. Duress

¶ 44    Power also argues duress. "A contract will be voided if it is the product of duress." *Osage Corp. v. Simon*, 245 Ill. App. 3d 836, 843 (1993), *cited with approval by In re N.C.*, 2014 IL 116532, ¶ 54. "Duress exists if a party is induced by the wrongful act of another to make a contract under circumstances which deprive the party of her exercise of free will." *Osage Corp.*, 245 Ill. App. 3d at 843. "A wrongful act need not be an illegal act, but may include one that is wrongful in a moral sense." *Osage Corp.*, 245 Ill. App. 3d at 843. "Duress includes oppression, undue influence, or taking undue advantage of the stress of another to the point where another is deprived of the exercise of free will." *In re Marriage of Richardson*, 237 Ill. App. 3d 1067, 1082 (1992). "[D]uress is ordinarily a question of fact," and it "may only be decided as a matter of law where the undisputed facts lead to only one plausible

15

inference." *Potek v. City of Chicago*, 2022 IL App (1st) 211286, ¶ 57. Where several inferences may be drawn from the facts, summary judgment cannot be granted on that basis. *Potek*, 2022 IL App (1st) 211286, ¶ 57.

¶ 45    In the case at bar, Fogu testified that he was operating under the demand and direction of a state police officer, that the officer gave him Set's name and number and "told [him] to" call Set, and that Fogu did not know what the consequences would be if he did not call. However, long after this duress had faded, namely, at his deposition, Fogu testified that the "forty-four thousand" invoice was "fair." This statement negates his claim that Set's conduct was somehow unfair and that he would not have agreed but for the alleged duress. Thus, we do not find Power's claim of duress persuasive with respect to the October 9, 2019, invoice for approximately forty-four thousand dollars. In addition, as for the December 12, 2019, invoice, it was for work done weeks after the initial incident, when any emergent duress would have dissipated. As a result, we affirm the trial court's dismissal of Power's duress claim in its entirety.

¶ 46                                   CONCLUSION

¶ 47    We affirm the trial court's finding of summary judgment with respect to the emergent work done on August 30, the day of the spill. However, pursuant to *de novo* review and being mindful that Set, as both the drafter of the contract and the movant for summary judgment, bears the burden of proof, we reverse the trial court's grant of summary judgment with respect to the rest of the charges, where the contract drafted by Set specifically provided that any "continuing work" must be "agreed upon" and there was no subsequent agreement; where the contract had no limits at all regarding the ultimate cost or scope of work except that Set would do what was "required;" and where there was no indication of who would ultimately judge or

16

determine what was required. Although the parties manifested the intent to make a contract for the emergent work, the "continuing work" was too uncertain and indefinite for a court to enforce without a further agreement, as the contract itself expressly required.

¶ 48    For the foregoing reasons, we affirm in part and reverse in part the trial court's grant of summary judgment and remand for further proceedings consistent with this opinion. Set may, if it so chooses, amend its complaint to add a *quantum meruit* claim and Power is permitted discovery, as was discussed at oral argument.

¶ 49    Affirmed in part, reversed in part, and remanded.