NOTICE

Decision filed 06/12/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 240686-U

NO. 5-24-0686

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| SMOKE SERVICES RESTORATION, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 22-LA-495 |
| | ) | |
| CASEYVILLE HOSPITALITY GROUP, LLC, and | ) | |
| SHAIQ AMIR, | ) | Honorable |
| | ) | Christopher T. Kolker, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

JUSTICE McHANEY delivered the judgment of the court.
Justices Boie and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court correctly found that the contract between Smoke Services Restoration, Inc., and Shaiq Amir, manager and authorized agent of Caseyville Hospitality Group, LLC, was valid and enforceable, and we affirm the court's judgment. We affirm the circuit court's holding that Caseyville Hospitality Group, LLC, and Shaiq Amir are jointly responsible for Smoke Services Restoration, Inc.'s bill for services rendered.

¶ 2    This case was filed by Smoke Services Restoration, Inc. (Smoke Services), against Caseyville Hospitality Group, LLC (Caseyville Hospitality), and Shaiq Amir (Amir) for nonpayment of bills for fire restoration services performed by Smoke Services at a motel owned by Caseyville Hospitality and managed by Amir.

¶ 3    Following restoration work, Smoke Services submitted two invoices for payment totaling $237,954.73. The insurer, through an agent, paid Caseyville Hospitality approximately $500,000

1

for the fire loss claim, and paid Amir an additional $50,000. Amir paid Smoke Services $50,000 but did not pay the $187,954.73 balance owed. Smoke Services filed its lawsuit against Caseyville Hospitality and Amir for reimbursement of the balance of its charges. After a bench trial, the circuit court ruled in favor of Smoke Services. On May 7, 2024, the circuit court entered a judgment against both Caseyville Hospitality and Amir, jointly and severally, for $301,215.65 (principal ($187,954.73), 18% contractual interest ($101,495.55), and attorney fees ($11,765.37). Caseyville Hospitality and Amir timely appealed.

¶ 4                                  I. BACKGROUND

¶ 5       On April 3, 2021, a fire broke out in the laundry area of a Days Inn motel in Caseyville. The City of Caseyville immediately closed the motel until repairs were made. The motel is franchised as a Days Inn, owned by Caseyville Hospitality, and managed by Amir. Amir serves as the motel's general manager and is an authorized agent for Caseyville Hospitality. Amir managed the motel on behalf of his son, who is the sole owner or "member" of Caseyville Hospitality. Amir testified at trial that he had no prior experience with fire loss insurance claims and that remediating the fire damage was paramount to reopening the motel for guests.

¶ 6       To navigate the insurance process, Amir contacted a Missouri-based public adjuster, who recommended a public adjuster, Dan Long (Long). Amir hired Long to manage the claim and delegated involvement with remediation services and the insurance claim to him. Amir stated: "When I signed the contract with [Long] he took over everything. He's the one who going to decide everything." Long recommended Smoke Services to Amir as a company who could remediate the fire damage.

¶ 7       On or about April 14, 2021, the owner of Smoke Services, Bob Marlar (Marlar), visited the motel to review the damage. Marlar testified that he thought Amir owned the motel because

2

Amir claimed ownership, and only later learned that the motel was owned by Caseyville Hospitality. He toured the site with his project manager, Lisa Bodendieck (Bodendieck). On April 16, 2021, Amir signed a Smoke Services contract on behalf of Caseyville Hospitality. The contract listed "Day's Inn" and Amir as parties, and authorized Smoke Services to clean and restore the property using accepted methods and procedures. The contract did not state what Smoke Services would charge for its work, but stated that payment would be due upon completion.

¶ 8 Pursuant to the agreement, Caseyville Hospitality and Amir (the defendants) "agree[d] to use Smoke Services *** to perform services necessary to repair any areas at [the] property ***." Here, the evidence established that cleaning involved application of chemicals to all surfaces and items in the hallways and individual rooms, the use of industrial fans, and the use of machinery— an ozone generator and a hydroxyl generator to remove smoke damage.

¶ 9 Marlar testified that Smoke Services worked closely with the public adjustor Long to provide the insurance company with the mandated detailed cost estimates to remediate the fire and smoke damage. Smoke Services used the insurer's chosen industry-standard software program, "Xactimate," which included a diagram of the motel, its square footage, the number of rooms, and a count of each individual item and/or piece of furniture that had to be chemically treated. The Xactimate software generated estimates for the work which were reviewed and double-checked by both Long and the insurance company's claims adjusters.

¶ 10 Upon completion of its services, Smoke Services billed Caseyville Hospitality and Amir. The first invoice for $57,469.35 was labeled as "contents cleaning" and the second invoice for $180,485.38 was labeled as "structure cleaning." On August 17, 2021, Amir signed a check made payable to Smoke Services in the amount of $50,000. In the memo section of the check, Amir wrote the "amount owed" as $180,485.38. At that time, Caseyville Hospitality and Amir did not

3

dispute the quality or necessity of the work performed. After no further payment was made, Smoke Services brought an action against Caseyville Hospitality and Amir seeking damages for breach of contract.

¶ 11    At trial, counsel for Caseyville Hospitality and Amir acknowledged that the parties had a contract but noted that the contract did not set a specific cost amount for services. Counsel argued that "the amount should be the reasonable amount or the reasonable value of reasonable services provided." Amir testified that he signed the contract with Smoke Services in his capacity as the motel's authorized agent, and at that time, Smoke Services did not know the total cost to remediate the property and contents. He testified that while he could handle the business side of managing a motel, "[t]his is the first time of 35 years [in the motel business] that I went to insurance claim ***." Amir stated that he hired Long to manage the remediation and insurance claim.

¶ 12    The circuit court found that a valid contract existed, that the work was performed in accordance with industry standards, and that the charges were fair, reasonable, and customary. More specifically, the court found that there was no "credible testimony disputing the charges" outlined in the Xactimate software calculation. The court found that there had been "no dispute that that is the reasonable[,] necessary[,] fair, [and] customary way to do it and the fees earned *** were reasonable, customary[, and] in the ordinary course of business for the work that Smoke Services did to the hotel and the rooms in it." The court further noted that the only testimony about the final Smoke Services estimate/bill was that "it was double checked *** by the insurance company and by [Public Adjuster] Dan Long." The court concluded that there was no credible testimony disputing Smoke Services' charges and found that the parties entered into a valid contract without coercion. On May 7, 2024, the circuit court entered a written order against both

Caseyville Hospitality and Amir, jointly and severally, for $301,215.65, from which Caseyville Hospitality and Amir appeal.

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, Caseyville Hospitality and Amir contend that the circuit court's order was erroneous because the cost provision of Smoke Services' contract was too ambiguous to enforce. The defendants also contend that only Caseyville Hospitality or Amir can be liable, and the circuit court's ruling that both were liable is erroneous.

¶ 15                         A. Enforceability of Contract

¶ 16    "The existence of a contract, its terms, and the parties' intent are questions of fact to be determined by a trier of fact." *Arbogast v. Chicago Cubs Baseball Club, LLC*, 2021 IL App (1st) 210526, ¶ 19 (citing *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2016 IL App (1st) 142754, ¶ 81). "To be enforceable, a contract must be sufficiently definite and certain, such that a court is able to ascertain from its terms what the parties intended." *Set Environmental, Inc. v. Power Cartage, Inc.*, 2022 IL App (1st) 211403, ¶ 29 (citing *DiLorenzo v. Valve & Primer Corp.*, 347 Ill. App. 3d 194, 199-200 (2004)). Offer, acceptance, and consideration are the basic requirements of a contract. *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 151 (2006). "Valuable consideration for a contract consists of some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." *Dohrmann v. Swaney*, 2014 IL App (1st) 131524, ¶ 23. If there is no factual dispute, the issue of whether the contract exists presents a question of law. *Id.* (citing *Hany v. General Electric Co.*, 221 Ill. App. 3d 390, 397 (1991)).

¶ 17    In Illinois, the standard of review after a bench trial is whether the order or judgment is against the manifest weight of the evidence. *Reliable Fire Equipment Co. v. Arredondo*, 2011 IL

5

111871, ¶ 12. "However, to the extent that issues in a bench trial involve *** the legal effect of documents, such rulings are conclusions of law that the appellate court reviews *de novo*." *Granville Tower Condominium Ass'n v. Escobar*, 2022 IL App (1st) 200362, ¶ 27 (citing *Eychaner v. Gross*, 202 Ill. 2d 228, 252 (2002)). As our decision on this issue is based upon the legal effect of the April 16, 2021, contract, our review is *de novo*.

¶ 18    At the beginning of the bench trial in this case, counsel for the defendants had the following exchange with the circuit court about the nature and enforceability of the contract:

"MR. KANZLER [(ATTORNEY FOR THE DEFENDANTS)]: I would just say, Your Honor, we agree to the contract. We agree that the company came in and did—agreed to do some work, and that my client—well my client, Caseyville Hospitality, signed a contract.

The question is the contract doesn't say the amount that would be paid. And therefore, the amount should be the reasonable amount or the reasonable value of reasonable services provided. And I think that's the issue here, Your Honor, what was actually performed.

THE COURT: Okay, so you agree that—so you agree there was—you guys both agree there was a contract?

MR. KANZLER: Yes, sir.

THE COURT: Under the contract, Smoke Services was to be paid for work they did, but defendants would argue it has to be reasonable and—

MR. KANZLER: They have to actually do it.

THE COURT: —they have to actually do it?

MR. KANZLER: Yeah."

6

¶ 19     Although the defendants agree that a contract was created in this case, they contend that the contract was unenforceable for failing to sufficiently include the anticipated amount of the charges—therefore the contract was not sufficiently definite and certain. *Set Environmental, Inc.*, 2022 IL App (1st) 211403, ¶ 29. Smoke Services responds that the agreement was sufficiently definite by designating the anticipated scope and nature of the work to be performed. While the parties' contract was silent as to the total amount to be charged, it did provide that the parties: "understand *** that the article/premises have been damaged, and Smoke Services Restoration, Inc. will work in accordance with accepted methods and procedures in attempting to clean and restore."

¶ 20     Here, the defendants' public adjuster, Long, and the unnamed insurance adjuster assigned to the claim oversaw all work done at the motel by Smoke Services. The defendants' insurer mandated use of the industry standard program, Xactimate, to track and detail the amount of time spent and what rooms, hallways, and items were cleaned. The defendants failed to object to the use of Xactimate software during the cleanup process.

¶ 21     While the amount to be charged is a standard element required in contracts, there are exceptions to its inclusion if there is an emergency and a contract is signed during the emergency so that work can immediately begin. See *Set Environmental, Inc.*, 2022 IL App (1st) 211403, ¶ 39. We find nothing in the record to dispute that Amir, acting individually and on behalf of Caseyville Hospitality, had the requisite intent to contract with Smoke Services to address the emergency nature of the fire damage, and authorized Smoke Services to remediate the motel expeditiously so that it could be reopened for business.

¶ 22     Moreover, once Amir hired Long to manage the project, Long was the agent for both Amir and Caseyville Hospitality and had the ability to bind them to the resulting cleanup charges. " 'An

7

agency is a fiduciary relationship in which the principal has the right to control the agent's conduct and the agent has the power to act on the principal's behalf.' " *Saletech, LLC v. East Balt, Inc.*, 2014 IL App (1st) 132639, ¶ 14 (quoting *Powell v. Dean Foods Co.*, 2013 IL App (1st) 082513-B, ¶ 65, citing *Letsos v. Century 21-New West Realty*, 285 Ill. App. 3d 1056, 1064 (1996)); see also *Bosch v. NorthShore University Health System*, 2019 IL App (1st) 190070, ¶ 86 (citing *Saletech, LLC*, 2014 IL App (1st) 132639, ¶ 15). Thus, agency law dictates that the agreement is enforceable. Amir admitted at trial that he hired public adjustor Long to manage the project because he had no previous fire and/or smoke damage experience. Long recommended the services of Smoke Services, and Amir's insurance company mandated that Smoke Services utilize the Xactimate software for detailing the expenses. Long facilitated the repairs and communication between the parties and the insurer. Ultimately, Long successfully settled the damages' claims with the insurer resulting in Caseyville Hospitality receiving $500,000 and Amir receiving $50,000.

¶ 23    Thus, as Smoke Services was contracted to remediate the fire and smoke damage issues and/or as Amir, general manager of the motel and authorized agent for Caseyville Hospitality, engaged the services of public adjustor Long to manage the remediation and the insurance claim as the defendants' agent, the defendants are responsible for Smoke Services' charges. Accordingly, we affirm the circuit court's judgment.

¶ 24    Finally, even if we were to conclude that the lack of a set cost in Smoke Services' contract rendered the contract unenforceable despite exigent circumstances and the defendants' appointment of an agent to manage the project, the doctrine of *quantum meruit* establishes that the amount awarded was appropriate. The legal term, *quantum meruit*, is defined as "as much as he deserves." *Romanek-Golub & Co. v. Anvan Hotel Corp.*, 168 Ill. App. 3d 1031, 1041 (1988) (citing

8

*Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.*, 87 Ill. App. 3d 480, 486 (1980)). "A party seeking recovery on a *quantum meruit* theory must demonstrate the performance of services by the party, the conferral of the benefit of those services on the party from whom recovery is sought, and the unjustness of the latter party's retention of the benefit in the absence of any compensation." *First National Bank of Springfield v. Malpractice Research, Inc.*, 179 Ill. 2d 353, 365 (1997) (citing *In re Estate of Callahan*, 144 Ill. 2d 32, 40 (1991)). Here, the evidence at trial established the precise time and specific services Smoke Services provided in remediating the fire and smoke damage. While the defendants' attorney initially questioned what services Smoke Services performed and commented that the business had "to actually do [the work]," the evidence at trial established through testimony and the Xactimate estimates the precise work Smoke Services performed on site. A thorough review of the record fails to lead to the conclusion that Amir's confusion, individually and/or on behalf of Caseyville Hospitality, regarding the Xactimate software, his admitted lack of knowledge regarding insurance claims, and his lack of expertise on cleaning fire and smoke damaged property somehow resulted in unreasonable charges for the remediation work Smoke Services provided. The defendants' insurer was frequently on-site inspecting Smoke Services' work, Amir hired Long to manage the work and the insurance claim on the defendants' behalf, and the insurer made payments to the defendants totaling $550,000.

¶ 25    We conclude that the circuit court's order that Smoke Services' contract was enforceable is correct on multiple grounds: the work was performed on an emergency basis; the defendants hired an agent to act on their behalf which bound them to Smoke Services' contract; and the doctrine of *quantum meruit* establishes that the amount awarded in the judgment was appropriate.

9

¶ 26                    B. Liability of Caseyville Hospitality and Amir

¶ 27    The defendants also argue that the circuit court erred in holding both Amir and Caseyville Hospitality liable for the outstanding amount billed by Smoke Services. The basis for this argument is that Amir has no ownership status with Caseyville Hospitality. While evidence at trial established that Amir was the manager of the motel, and had no ownership interest in the motel, we find that the circuit court appropriately found that Amir was liable. "Joint contractual obligations generally 'shall be taken and held to be joint and several obligations and covenants.' " *Brokerage Resources, Inc. v. Jordan*, 80 Ill. App. 3d 605, 608 (1980) (quoting Ill. Rev. Stat. 1977, ch. 76, ¶ 3).

¶ 28    We first note that when Smoke Services arrived at the motel, the defendants' agent, Long, met with the company and introduced Amir as the motel's "owner." Long never objected to Amir's identification in the contract, nor asked for a modification. Amir also did not correct Long when he was identified as the owner of the motel. Moreover, the circuit court found that Amir admitted he was the authorized agent for Caseyville Hospitality. Next, Bodendieck, Smoke Services' project manager, testified at trial that Amir was the only person associated with the motel with whom she engaged. She also testified that Long introduced Amir as the owner, and thus she added his name on the contract, along with the motel—Days Inn. Additionally, neither Long as the defendants' agent, nor Amir himself, objected to being named as a party to Smoke Services' contract. After the insurance company paid the insurance claim directly to the defendants' agent, Long issued a $500,000 check to Caseyville Hospitality and a $50,000 check to Amir personally, which infers Amir's ownership status. Finally, the matter of the parties' intention in including Amir as a party to the contract, and his failure to discount that belief, presented the circuit court with a factual and credibility question. The circuit court resolved that question finding that Amir was a rightfully

10

named party to the action, concluded that the trial evidence established the validity of a contract between Smoke Services and the defendants, and held that the contract was validly created and signed without any coercion by Smoke Services. For these reasons, we affirm the circuit court's order holding Amir jointly liable.

¶ 29                              III. CONCLUSION

¶ 30    We affirm the judgment of the St. Clair County circuit court for the reasons stated above.


¶ 31    Affirmed.